**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PASCUAL GONZALEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>HOOVESTOL, INC., *a Delaware Corporation*; 10 ROADS EXPRESS, LLC, *a Delaware Limited Liability Company*,<br><br>    Defendants. | Case No. 1:23-cv-00202-JLT-CDB<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING CASE PENDING RESOLUTION OF ARBITRATION<br><br>(Doc. 15) |

Pascual Gonzalez brings this disability employment discrimination and wrongful termination case against his former employers, Hoovestol, Inc. and 10 Roads Express, LLC, asserting several claims under FEHA, the CFRA, and the FMLA. For the reasons set forth below, the Court **GRANTS** Defendants' Motion to Compel Arbitration (Doc. 15) and **ADMINISTRATIVELY STAYS** this action pending resolution of arbitration.

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Between August 2020 and February 2021, Plaintiff worked for Defendants as a commercial truck driver. (Doc. 1 at ¶ 10.) Throughout his employment, Plaintiff suffered allergic reactions, rashes, headaches, and asthma due to the "secondhand cigarette smoke embedded in the cabins of trucks" that Defendants assigned him to drive. (*Id.* at ¶ 12.) Plaintiff repeatedly complained about the conditions of his working environment to his manager, to no

avail, sought medical attention for his "ailments connected to a chronic, disabling health condition," and obtained a note from his physician, allowing him to take a leave of absence for approximately three days. (*Id.* at ¶¶ 13–15.) During this time, Plaintiff's manager ignored his complaints and doctor's note. (*Id.*) Plaintiff then submitted a request for five days of sick leave; Defendants failed to respond. (*Id.* at ¶ 16.) Plaintiff again complained to his manager about unsafe working conditions, but Defendants failed to address his concerns. (*Id.* at ¶ 18.) Plaintiff complains also that Defendants failed to timely pay Plaintiff his legally owed wages and failed to pay him during his five-day sick leave. (*Id.* at ¶ 19.) When Plaintiff notified his manager about not receiving his sick pay, his manager threatened him with termination. (*Id.* at ¶ 20.) Plaintiff timely filed a complaint with the Department of Fair Employment and Housing and received his right-to-sue letter. (*Id.* at ¶ 25.)

## II. LEGAL STANDARD

"The Federal Arbitration Act ('FAA') governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 830–31 (9th Cir. 2022) (internal quotation marks and citation omitted). "Under the FAA, private agreements to arbitrate are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* at 831 (quoting 9 U.S.C. § 2.) "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the *question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Id.* (emphasis in original) (internal quotation marks and citation omitted). Before compelling arbitration, the Court's task is two-fold: it must determine "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Id.* (internal quotation marks and citation omitted). Both requirements look to state law to determine whether the parties entered into an arbitration agreement, and whether that agreement covers the dispute at issue. *Id.* at 831–32.

If the parties dispute whether they entered into an arbitration agreement, the Court must rely on the summary judgment standard expounded in Federal Rule of Civil Procedure 56 to resolve that dispute. *Id.* "The summary judgment standard is appropriate because the district

court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (internal quotation marks and citation omitted). Thus, "a court is not authorized to dispose of a motion to compel arbitration until after material factual disputes have been resolved." *Knapke*, 38 F.4th at 831 (cleaned up) (internal quotation marks and citation omitted).

### A. Rule 56: Summary Judgment

Federal Rule of Civil Procedure 56 governs the Court's summary judgment standard. Fed. R. Civ. P. 56. Under this Rule, "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." *Id.* § 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Airlines for Am. v. City and Cnty. of San Francisco*, 78 F.4th 1146, 1152 (9th Cir. 2023) (internal quotation marks and citation omitted). Thus, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). Finally, "[w]here the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citation omitted).

Once the movant satisfies its initial burden, the burden then shifts to the non-movant to establish that a genuine issue as to any material fact does exist. *Id.* (citation omitted). "The burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Id.* (citation omitted). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III. DISCUSSION

A. <u>Validity of the Agreement</u>

3

At issue in this case is the disputed Arbitration Agreement's ("Agreement") choice-of-law provision, which requires: "All Claims must be resolved through binding arbitration, pursuant to the arbitration laws of the State of Minnesota, according to the procedures in this Agreement, and in no other manner." (Agreement, Ex. A, Doc. 15-2 at 2.) Indeed, at the top of every single page of the Agreement, there is a boldened, underlined warning stating: "**<u>NOTICE: THIS AGREEMENT IS SUBJECT TO THE ARBITRATION LAWS OF THE STATE OF Minnesota (Minn. Stat. Ann. Section 572.08 et seq.)</u>**." (*See generally id.*) The Agreement also provides that it "shall be governed by, construed, and enforced pursuant to the procedural and substantive provisions of the arbitration laws of the state of Minnesota, and not the [FAA]." (*Id.* at 5, ¶ 15.)[1]

"[W]hether the choice of law provision applies depends on whether the parties agreed to be bound by [the Agreement] in the first place." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014); *Karim v. Best Buy Co., Inc.*, No. 22-cv-04909-JST, 2023 WL 3801909, at *2 (N.D. Cal. June 2, 2023). The parties dispute whether Minnesota or California law governs the validity of the parties' contract formation. (*Compare* Defs.' Mot., Doc. 15 at 13 (applying Minnesota law) *with* Pl.'s Opp'n, Doc. 18 at 4 (applying California law).) However, "[t]he Court need not engage in this circular inquiry because both California and Minnesota law follow the objective theory of contract formation." *Karim*, 2023 WL 3801909, at *2 (cleaned up) (internal quotation marks and citations omitted); *see also Abidzadeh v. Best Buy, Co. Inc.*, No. 20-cv-06257-JSW, 2021 WL 4440313, at *4 (N.D. Cal. Mar. 2, 2021) ("In California, the forum state, and Minnesota, the state identified in the [Agreement's] choice-of-law provision, courts follow the objective theory of contract formation.") (footnote omitted) (citing *T.M. Cobb Co. v. Sup. Ct.*, 36 Cal. 3d 273, 282 (Cal. 1984) and *Speckel by Speckel v. Perkins*, 364 N.W.2d 890, 893 (Minn. Ct. App. 1985)). "Under this theory, the parties must mutually manifest their assent to the terms

---

[1] "While the FAA preempts any particular state law that may *impede* the FAA's objectives, state law still generally governs whether the parties agreed to arbitrate and whether any defenses invalidate an agreement." *McLaurin v. Russell Sigler, Inc.*, 155 F. Supp. 3d 1042, 1044–45 (C.D. Cal. 2016) (emphasis added) (citations omitted).

The Court therefore looks to state law to govern the formation of the parties' Agreement, and Plaintiff's asserted defenses to contract.

4

of the agreement." *Karim*, 2023 WL 3801909, at *2 (citing California and Minnesota Courts of Appeals).

### i.   *Mutual Assent*

Defendant has attached a copy of the Agreement to its motion, the final page of which, states in bold: "**I understand this Agreement contains an agreement to arbitrate.  After signing this document, I understand I will not be able to bring a lawsuit concerning any dispute that may arise, which is covered by this arbitration agreement, . . . Instead, I agree to submit any such dispute to an impartial arbitrator**." (Ex. A, Doc. 15-2 at 6 (boldening in original).) The final paragraph also states: "**I agree that I have been given a reasonable opportunity to read this Agreement carefully.  I have read it, I understand it, and I am signing it voluntarily.  I have not been promised anything for signing it that is not described in this Agreement.  Company informed me of my right to discuss this Agreement with an attorney of my choosing, prior to signing it.**" (*Id.* (boldening in original).) Defendants contend that Plaintiff electronically signed—in cursive and in print—his name and dated the document directly below these final two paragraphs of the Agreement, alongside the signature of Defendant's representative. (*Id.*)  The document indicates that Plaintiff electronically placed his initials on the second page of the document, directly underneath the relevant binding arbitration provision. (*Id.* at 3.) The evidence demonstrates that to be able to sign the Agreement, the signor had to "have had access to plaintiff's personal identifying information, including his social security number, and signed the agreement on the same day it was sent to Plaintiff." (Doc. 20 at 3) Thus, the circumstantial evidence supports that Plaintiff signed the Agreement.

Plaintiff appears to contradict this showing by stating, "At no time do I ever recall discussing an agreement to arbitrate claims I might have against Hoovestol.  Nor was I ever told [by] Hoovestol that any documents given to me contained a purported arbitration agreement.  I do not recall executing any sort of agreement by computer and [I] do not recognize the squiggly computer line on the document attached to Ms. Ellis'[s] declaration as my signature." (Gonzalez Decl., Doc. 18-1 at ¶ 5.)

"The existence of mutual consent is determined by objective rather than subjective

criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe"—the "primary focus" of the inquiry "is upon the acts of the parties involved." *Monster Energy Co v. Schechter*, 7 Cal. 5th 781, 789 (Cal. 2019) (internal quotation marks and citation omitted); *Vermillion State Bank v. Tennis Sanitation, LLC*, 969 N.W.2d 610, 628 (Minn. 2022) ("Whether mutual assent exists is judged objectively, not subjectively.") (internal quotation marks and citation omitted). Both California and Minnesota agree that "in the absence of fraud, mistake, or another vitiating factor, a signature on a written contract is an objective manifestation of assent to the terms set forth there." *Schechter*, 7 Cal. 5th at 789; *see Bess v. Bothman*, 257 N.W.2d 791, 794 n.1 (Minn. 1977) ("We find no evidence indicating that defendant's will was not his own when he signed the contract.") (citation omitted); *see also Asbestos Prods, Inc. v. Healy Mech. Contractors, Inc.*, 306 Minn. 74, 78 (Minn. 1975). In both states, a party may indicate his assent via electronic signature. *Park v. NMSI, Inc.*, 96 Cal. App. 5th 346, 355 (Cal. Ct. App. 2023); Cal. Civ. Code §§ 1633.7(a)–(b); *see also SN4, LLC v. Anchor Bank, fsb*, 848 N.W.2d 559, 566 (Minn. Ct. App. 2014) ("'A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.'") (quoting Minn. Stat. § 325L.07(a)).

On this record, Plaintiff does not squarely dispute that he signed the Agreement, and does not claim there was any fraud, mistake, or other "vitiating factor" to allow the Court to ignore his signature as a manifestation of assent. *Schechter*, 7 Cal. 5th at 789; *Bess*, 257 N.W.2d at 794 n.1. Plaintiff declares only that he does not recall signing the Agreement and does not recognize his signature. (Doc. 18-1 at 2-3) This is an insufficient basis to conclude the parties did not enter into the Agreement. *Iyere v. Wise Auto Grp.*, 87 Cal. App. 5th 747, 758 (Cal. Ct. App. 2023) ("If a party confronted with his or her handwritten signature on an arbitration agreement is unable to allege that the signature is inauthentic or forged, the fact that that person does not recall signing the agreement neither creates a factual dispute as to the signature's authenticity nor affords an independent basis to find that a contract was not formed."); *compare with Flores v. Point Pickup Techs., Inc.*, No. 1:22-cv-00193-JLT-SKO, 2023 WL 8295943, at *6 (E.D. Cal. Dec. 1, 2023) (Plaintiff provided thorough declaration detailing onboarding steps, declaring that she never reviewed nor signed arbitration agreement, and that employer never provided her with agreement

prior to employment) .

Though Plaintiff declares that he never discussed the Agreement with anyone at Hoovestol, he has cited no authority demonstrating that this was required for enforcement of the Agreement. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (Cal. 2015) ("Valencia was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to Sanchez's attention."); *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943 (Cal. Ct. App. 2022) ("If an offeree objectively manifests assent to an agreement, the offeree cannot avoid a specific provision of that agreement on the ground the offeree did not actually read it.") (citation omitted); *id.* at 944 (offeror's only obligation to offeree is to present the contract to offeree). Ultimately, mutual assent is determined by the parties' "reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Blizzard Ent.*, 76 Cal. App. 5th at 943. Based upon the evidence presented, the Court funds that the parties entered into a valid Agreement.

B. Defenses to Contract: Unconscionability

Plaintiff next argues that the Agreement is both procedurally and substantively unconscionable because: (1) "[t]he contract is one of adhesion," making it "per se procedurally unconscionable," (2) the Agreement's arbitration venue/forum selection clause is both procedurally and substantively unconscionable because it deprives Plaintiff of a federal forum to litigate his claims and requires that he travel hundreds of miles; (3) the Agreement's arbitration clause is unilateral and therefore substantively unconscionable; and (4) the Agreement's limitations on discovery and "potential exposure to arbitration fees" are substantively unconscionable. (Doc. 18 at 6–10 (emphases omitted).)

Both California and Minnesota recognize unconscionability as a defense to contracting. *See Maslowski v. Prospect Funding Partners LLC*, 994 N.W.2d 293, 301–02 (Minn. 2023); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (Cal. 2015).[2] "The doctrine of

---

[2] It appears that the Minnesota Supreme Court may be inclined to adopt both procedural and substantive unconscionability but has yet to do so in a majority opinion. *Maslowski*, 994 N.W.2d at 305 (Moore, III, J., concurring) ("Most courts considering the question [of unconscionability] require a showing of both procedural unconscionability and substantive unconscionability."). The Minnesota Supreme Court *has* expounded these specific defenses, however, regarding antenuptial agreements. *E.g.*, *McKee-Johnson v. Johnson*, 444 N.W.2d 259, 265

unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Sanchez*, 61 Cal. 4th at 910 (internal quotation marks and citation omitted). "The prevailing view is that procedural and substantive unconscionability must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id.* (cleaned up) (emphasis in original) (internal quotation marks and citation omitted). "But they need not be present in the same degree. Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." *Id.*

Put another way, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (internal quotation marks and citation omitted). Ultimately, the Court is not concerned with "a simple old-fashioned bad bargain . . ., but with terms that are unreasonably favorable to the more powerful party." *Id.* at 911 (internal quotation marks and citation omitted). As such, "[a] party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain"—"[n]ot all one-sided contract provisions are unconscionable; hence the various intensifiers in [the Supreme Court's] formulations: '*overly* harsh,' '*unduly* oppressive,' '*unreasonably* favorable.'" *Id.* (emphases in original).

### i.  Procedural Unconscionability

"An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power on a take-it-or-leave-it basis." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (Cal. 2019). Defendants dispute that the Agreement was not one of adhesion yet fail to offer proof showing otherwise. (Reply, Doc. 19 at 8 ("Plaintiff sets forth the baseless claim[] that the Agreement was one of adhesion").) Ultimately, "[t]he burden of proving

---

(Minn. 1989). Regardless, as the parties entered into the Agreement in California, the Court is satisfied addressing these California-specific defenses to the instant Agreement, with the knowledge that Minnesota is not necessarily in disagreement.

1  unconscionability rests upon the party asserting [the defense]." *OTO*, 8 Cal. 5th at 126 (citations
2  omitted). Defendants note that signing the Agreement was not a condition of employment. (Doc.
3  15-1 at2) Plaintiff does not dispute this but persists in claiming that it is a contract of adhesion.
4  (Gonzalez Decl., Doc. 18-1.) Plaintiff declares that he does not "recall discussing an agreement to
5  arbitrate claims I might have against Hoovestol."  (*Id.* at ¶ 5.) These assertions do not satisfy
6  Plaintiff's burden to show that the Agreement is one of adhesion.

7  Regardless, even if the Court accepted Plaintiff's failure to recall entering contract
8  discussions as implying the Agreement is adhesive, the Court would find there was no oppression
9  exercised in the formation of the contract. *OTO*, 8 Cal. 5th at 126–27 (internal quotation marks
10 and citation omitted).  Plaintiff has not brought forth *any* competent summary judgment evidence
11 to assist the Court in evaluating whether these five factors exist and weigh in favor that there is no
12 genuine dispute the Agreement was unduly oppressive.  *Id.*; *Sanchez*, 61 Cal. 4th at 910.[3]

13 Upon review of the instant Agreement, it is five pages long, mentions arbitration in bold
14 and underlined at the top of every page, explains the initiation and procedure of arbitration, and in
15 the final paragraph states: "I have read it, I understand it, and I am signing it voluntarily.  I have
16 not been promised anything for signing it that is not described in this Agreement.  Company
17 informed me of my right to discuss this Agreement with an attorney of my choosing, prior to
18 signing it."  (Ex. A, Doc. 15-2 at 6 (boldening omitted).)  Plaintiff does not dispute signing this
19 document and has failed to proffer competent evidence suggesting this final paragraph is untrue.
20 Plaintiff has therefore failed to meet his burden to show the adhesive nature of the Agreement is
21 procedurally unconscionable.

22 Plaintiff's second theory for procedural unconscionability is that the Agreement's forum
23 selection clause constitutes "forum shop[ping]," and forces Plaintiff to travel to Oakland,
24 California, which is "several counties and hundreds of miles from Plaintiff's home" in Kern
25 County. (Doc. 18 at 7.)  Plaintiff argues that the forum selection clause "deprives [Plaintiff] of

---

[3] Defendants have attached the Supplemental Declaration of Caitlin Ellis, who states that "there is no time limit for an employee to complete" their onboarding documents.  (Ellis Decl., Doc. 20 at ¶ 7.)
This is of no import, as it is *Plaintiff's* burden to show why the Agreement is conclusively oppressive.  Plaintiff failed to carry his burden in doing so by failing to attach any evidence in support of his arguments.

9

federal jurisdiction . . . making the agreement even more unconscionable." (*Id.*)  The Court is not persuaded by either argument.

Plaintiff's Opposition points the Court to paragraphs four and fifteen of the Agreement as the relevant forum selection clauses. (Doc. 18 at 7.)  Paragraph four states: "In the event either of the parties <u>brings an action in a court</u> to compel arbitration under this Agreement, or to otherwise challenge any provision of this Agreement, . . . I hereby consent to the exclusive jurisdiction and venue of the state court specifically sitting in the city nearest my work reporting location, which shall be either Oakland, California, . . ." (Ex. A, Doc. 15-2 at 3, ¶ 4 (underlining added).)  Similarly, paragraph fifteen states: "In the event either of the parties <u>bring an action in a court</u> to compel arbitration under this Agreement, or to otherwise challenge any provision of this Agreement, such actions shall be brought only in one of the following state courts, in the court location nearest my work reporting location: California . . ." (*Id.* at 5, ¶ 15 (underlining added).)  Indeed, these appear to be the *only* forum selection clauses in the five-page Agreement, and the only mention of Oakland, California.

Regardless, in *Smith, Valentino & Smith, Inc. v. Superior Court*, the California Supreme Court flatly rejected Plaintiff's two points of contention.  17 Cal. 3d 491 (Cal. 1976). The Supreme Court stated: "The assertion that forum selection clauses are void per se as constituting attempts to oust the courts of their jurisdiction has been challenged as hardly more than a vestigial legal fiction which reflects something of a provincial attitude regarding the fairness of other tribunals." *Id.* at 495 (cleaned up) (internal quotation marks and citation omitted).  Thus, "it is readily apparent that courts possess discretion to [d]ecline to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum." *Id.*

Regarding Plaintiff's argument related to distance and expense, the Court stated: "Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration of these things." *Id.* at 496 (internal quotation marks and citation omitted); *see also CQL Original Prods, Inc. v. Nat'l Hockey League Players Ass'n*, 39 Cal. App. 4th 1347, 1354 (Cal. Ct. App. 1995) ("[N]either inconvenience nor additional expense in litigating in the selected forum is part of the test of unreasonability.")

(internal quotation marks and citations omitted).  Moreover, "courts have placed a substantial burden on a plaintiff seeking to defeat such a clause, requiring it to demonstrate [that] enforcement of the clause would be unreasonable," such as "that the forum selected would be unavailable or unable to accomplish substantial justice."  *CQL*, 39 Cal. App. 4th at 416.  Thus, Plaintiff has failed to show that the forum selection requires that the arbitration occur in Oakland or that the clause is procedurally unconscionable, simply because it deprives the Court of jurisdiction and requires that he expend time and money to travel to the arbitration location.  Plaintiff has also not demonstrated *why* the forum selected would deprive him of substantial justice.[4]

Ultimately, Plaintiff has failed to demonstrate any procedural unconscionability.  He has failed to satisfy his burden regarding the adhesive nature of the contract and has offered only skeletal arguments regarding the Agreement's forum selection clause.  Because Plaintiff must demonstrate *both* procedural and substantive unconscionability to assert his defense, and the Court has concluded that he definitively lacks the former, further analysis into the latter is unnecessary.  *See OTO*, 8 Cal. 5th at 126 ("*Both* procedural and substantive unconscionability *must* be shown for the defense to be established") (emphases added); *Sanchez*, 61 Cal. 4th at 910 ("The prevailing view is that procedural and substantive unconscionability must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.") (emphasis in original) (cleaned up) (internal quotation marks and citation omitted).

C. Choice of Law Provision

Based upon the claims raised, the Court has federal question jurisdiction in this case—and supplemental jurisdiction over Plaintiff's state law claims. Tis requires the Court to apply choice-of-law provisions of the forum. *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) (collecting cases); *see also Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010) (applying choice-of-law rules of the forum state in federal question RICO case, with

---

[4] In any event, the Court is unconvinced that the forum selection clause even requires that he travel to Oakland to arbitrate.

1  supplemental jurisdiction over state law California Business Professions Code claim). "California
2  applies the principles set forth in section 187 of the Restatement Second of Conflict of Law
3  (section 187) in determining the enforceability of contractual choice of law provisions." *Pitzer*
4  *Coll. v. Indian Harbor Ins. Co.*, 8 Cal. 5th 93, 100 (Cal. 2019) (citation omitted). Pursuant to the
5  section 187 of the Restatement, "the parties' choice of law generally governs unless (1) it
6  conflicts with [California's] fundamental public policy, and (2) [California] has a materially
7  greater interest in the determination of the issue than the contractually chosen state." *Id.* (citation
8  omitted). The Court must first determine whether Minnesota "has a substantial relationship to the
9  parties or their transaction, or (2) whether there is any other reasonable basis for the parties'
10 choice of law." *Id.* (internal quotation marks and citation omitted). After this first element is
11 satisfied, the Court next moves to the second inquiry: "whether [Minnesota] law is contrary to a
12 *fundamental* policy of California." *Id.* (emphasis in original) (internal quotation marks and
13 citation omitted). "If there is no such conflict, the court shall enforce the parties' choice of law."
14 *Id.* (internal quotation marks and citation omitted).

    *i.    Substantial Relationship Test*

16 Attached to Defendants' motion is the Declaration of Caitlin Ellis, the Human Resources
17 Director at DRT, LLC—the "shared service group that provides support . . . to Hoovestol, Inc.
18 and 10 Roads Express, LLC." (Ellis Decl., Doc. 15-1 at ¶ 2.) One of Ellis's responsibilities
19 "include[s] overseeing the execution of arbitration agreements by employees." (*Id.* at ¶ 3.) In her
20 declaration, Ellis states that "[b]ased upon [her] review of Hoovestol's founding documents,
21 Hoovestol, Inc. filed its Articles of Incorporation in the State of Minnesota on or about November
22 30, 1978" and "maintains its principal place of business in Eagan, Minnesota." (*Id.* at ¶ 13.)

23 For the purposes of the "substantial relationship" element, it appears that Plaintiff contests
24 Ellis's personal knowledge to make such a declaration. (Doc. 18 at 4); Fed. R. Civ. P. 56(c)(4).
25 On this point, the Court is not persuaded, as it is well-established that personal knowledge may be
26 based on a review of documents. *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1293
27 (9th Cir. 2019) (declaration based on personal knowledge where FBI agent "had reviewed the
28 relevant documents") (citing *Block v. City of L.A.*, 253 F.3d 410, 419 (9th Cir. 2001); *see also*

*Mitchell v. Ecolab, Inc.*, No. 1:22-cv-01088-EPG, 2023 WL 2666391, at *4 (E.D. Cal. Mar. 28, 2023) (determining that Human Resources Representative made declaration based on personal knowledge after she reviewed business records); *Sweet People Apparel, Inc. v. Saza Jeans, Inc.*, No. CV 14-1143 DMG (ASx), 2015 WL 12669884, at *1 (C.D. Cal. June 25, 2015) ("A witness's personal knowledge can be based on a review of documents.") (collecting cases). The Court is satisfied that Ellis had personal knowledge after reading Hoovestol's Articles of Incorporation to determine that the corporation is incorporated in Minnesota and maintains its principal place of business there.

The fact that Hoovestol is incorporated and headquartered in Minnesota is sufficient to satisfy California's "substantial relationship" test. *See Nedlloyd Lines B.V. v. Sup. Ct.*, 3 Cal. 4th 459, 467 (Cal. 1992) ("The incorporation of these parties in Hong Kong provides the required 'substantial relationship.'"); *see also ABF Cap. Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005) ("A substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state.") (citation omitted); *BASF Corp. v. Cesare's Collision Repair & Towing, Inc.*, 364 F. Supp. 3d 1115, 1119 (E.D. Cal. 2019) ("California courts have routinely found that the required substantial relationship exists where one of the parties is incorporated or maintains a principal place of business in the chosen state."). Accordingly, the first element is satisfied.

### ii. Contrary to Fundamental Policy

Next, the Court must consider "whether the chosen state's law is contrary to a *fundamental* policy of California." *Pitzer*, 8 Cal. 5th at 100 (emphasis in original). "California courts have recognized that there are no bright line rules for determining what is and what is not contrary to a fundamental policy of California." *Gomez v. Great-West Life & Annuity Ins. Co.*, 638 F. Supp. 3d 1156, 1160 (S.D. Cal. 2022) (internal quotation marks and citation omitted). "To be 'fundamental', the policy must be a substantial one." *Id.* (internal quotation marks and citation omitted). "The forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law." Restatement (Second) of Conflicts § 187 cmt. g (2024). Logically then, "[t]he mere fact that the chosen law provides lesser protection than California law, or that in a particular

1  application the chosen law would not provide protection while California law would, are not
2  reasons for applying California law." *S&J Rentals, Inc. v. Hilti, Inc.*, 294 F. Supp. 3d 978, 987
3  (E.D. Cal. 2018) (internal quotation marks and citation omitted).

4  Plaintiff's Opposition fails to directly address this element, though it appears that Plaintiff
5  makes two arguments: (1) it is unconscionable to confer authority to an arbitrator the ability to
6  deny Plaintiff "of any and all discovery"; and (2) it is unconscionable to confer an arbitrator the
7  authority to assign arbitration fees as they wish.  (Doc. 18 at 10–12.)  Though these are defenses
8  do not necessarily pertain to whether Minnesota law is contrary to California fundamental policy,
9  the Court will address each argument below.

10  1. Arbitrator's Control of Discovery

11  Minnesota Statute § 572B.17(c) provides: "An arbitrator may permit such discovery as the
12  arbitrator decides is appropriate in the circumstances, taking into account the needs of the parties
13  to the arbitration proceeding and other affected persons and the desirability of making the
14  proceeding fair, expeditious, and cost-effective." Minn. Stat. § 572B.17(c). On page three of the
15  parties' Agreement, paragraph 8.4 states: "Each party may conduct discovery to the full extent as
16  would be allowed in civil litigation in court in accordance with the Federal Rules of Civil
17  Procedure, subject only to limitation by the arbitrator upon motion of the other party on the
18  ground that limitation of such discovery is necessary to protect the party from waiver of privilege,
19  unwarranted annoyance, embarrassment, oppression, or undue burden or expense." (Ex. A, Doc.
20  15-2 at 4, ¶ 8.4.)  In essence, under the plain terms of the Agreement, the parties will be permitted
21  to conduct discovery exactly as they would if they remained in federal court.

22  Regardless, in *Armendariz*, the Supreme Court held that "it is undisputed that some
23  discovery is often necessary for vindicating a FEHA claim. Accordingly, whether or not the
24  employees in this case are entitled to the full range of discovery provided in Code of Civil
25  Procedure section 1283.05, they are at least entitled to discovery sufficient to adequately arbitrate
26  their statutory claim, . . . *as determined by the arbitrator(s)*." *Armendariz v. Found. Health*
27  *Psychare Servs., Inc.*, 24 Cal. 4th 83, 106 (Cal. 2000) (emphasis added). For this reason, the
28  California courts have determined that arbitrators are permitted to oversee discovery efforts. *See,*

14

1  *e.g.*, *Roman v. Sup. Ct.*, 172 Cal. App. 4th 1462, 1476 (Cal. Ct. App. 2009) (allowing for express authorization of arbitrator "to order 'such discovery . . . as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.'"); *see also Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 984 (Cal. Ct. App. 2010) ("Although the Amgen agreement purports to limit discovery to one deposition of a natural person, the agreement gives the arbitrator *broad discretion* contemplated by the AAA rules to order the discovery needed to sufficiently litigate the parties' claims.") (emphasis added).

As in *Dotson*, the Court cannot assume an arbitrator will be unfair in controlling discovery: "This assumption is not a consideration when determining the validity of a discovery provision. Indeed, it is quite the opposite. We assume that the arbitrator will operate in a reasonable manner in conformity with the law." *Dotson*, 181 Cal. App. 4th at 984.  The Court therefore concludes that Minnesota law's grant of authority to the arbitrator to control discovery is neither unconscionable, nor contrary to a fundamental policy of California.

2. Arbitrator Fees

Under Minnesota law, "an arbitrator may order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding." Minn. Stat. § 572B.21(c). "An arbitrator's expenses and fees, together with other expenses, must be paid as provided in the award." *Id.* § (d). Plaintiff now complains that California courts have "made extraordinarily clear that this kind of forced, adhesionary arbitration must never, ever result in a situation where the employee being forced to arbitrate could be made liable for any fees and costs unique to arbitration." (Doc. 18 at 11 (citing *Armendariz*, 24 Cal. 4th at 107, 113).) However, California Code of Civil Procedure § 1284.2 provides: "<u>Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree</u>, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator[.]" Cal. Civ. Pro. § 1284.2 (underlining added). Though Plaintiff cites to *Armendariz*, the California Supreme Court's ultimate holding was "that when an employer imposes mandatory arbitration *as a condition of employment*, the arbitration agreement or arbitration process cannot generally require

the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 24 Cal. 4th at 110–111 (first emphasis added, second emphasis in original). Furthermore, Plaintiff has not proffered any competent evidence to suggest that the Agreement was "a condition of employment." Thus, the Court therefore concludes that Minnesota's arbitration fee arrangement is not contrary to "fundamental" California policy.

D. Coverage of Dispute

Defendants apply Minnesota law to argue that "Plaintiff's claims fall within the scope of the Agreement." (*See generally* Doc. 15 at 14.)  Plaintiff evidently disagrees, stating that he is exempted under the FAA under the "transportation worker" exception.  (Doc. 18 at 2–3.)

"Whether a party has agreed to arbitrate a particular dispute is a matter of contract interpretation." *Glacier Park Iron Ore Props., LLC v. U.S. Steel Corp.*, 948 N.W.2d 686, 694 (Minn. Ct. App. 2020) (internal quotation marks and citation omitted). "To determine the scope of an arbitration clause, a court examines the language of the agreement." *Id.* (internal quotation marks and citation omitted). "In making that determination, courts generally apply state law principles that govern contract formation, to ascertain the parties' intent." *Id.* (internal quotation marks and citation omitted). "Generally, contracting parties are free to determine the scope and extent of their arbitration agreement, . . [and] [a]rbitration provisions are generally considered binding, and a significant body of authority exists supporting their enforcement." *Cmty. Partners Designs, Inc. v. City of Lonsdale*, 697 N.W.2d 629, 632 (Minn. Ct. App. 2005) (internal citations omitted); *Glacier Park*, 948 N.W.2d at 694 ("Minnesota appellate courts have often construed arbitration agreements broadly.") (internal quotation marks and citation omitted). "Any doubt with respect to the intent of the parties regarding the scope of arbitration should be resolved in favor of arbitration." *Glacier Park*, 948 N.W.2d at 694 (internal quotation marks and citation omitted).

Paragraph 15 of the parties' Agreement states: "**Governing Law.**  This Agreement shall be governed by, construed, and enforced pursuant to the procedural and substantive provisions of the arbitration laws of the state of Minnesota, *and not the Federal Arbitration Act*, 9 U.S.C. §1 et

seq." (Ex. A, Doc. 15-2 at 5, ¶ 15 (boldening in original) (emphasis added).) Under the plain language of the Agreement then, the transportation worker exemption is therefore inapplicable, because the parties contracted around the FAA. *Glacier Park*, 948 N.W.2d at 694.

Paragraph 2 of the Agreement delineates which claims the contract "covers." (Ex. A, Doc. 15-2 at 1, ¶ 2.) It states, in relevant part, "this Agreement applies to all disputes between Company and me, . . . all claims I may have against Company, or any of its officers, directors, employees, or agents, arising out of my employment with Company[.]" (*Id.*) "Claims covered by this Agreement include, but are not limited to, . . . Claims for any violation of any federal, state or local law, ordinance, regulation, or rule; Claims for wages, benefits or other compensation due; Claims for wrongful termination . . . and Claims of discrimination or harassment for any reason." (*Id.*)

Plaintiff's Complaint raises claims that sound in both federal and state law, and all arise out of his employment with Defendants, and he seeks "back pay, front pay, lost employment benefits and other compensation." (Doc. 1 at 17.) It is difficult, if not impossible, for the Court to conclude that the Agreement does not cover Plaintiff's disputes. Plaintiff's legal claims clearly fall within the purview of the Agreement. Similarly, Plaintiff's monetary damage requests also fall within the Agreement's coverage. Thus, the Court **GRANTS** Defendants' Motion to Compel Arbitration and **STAYS** the action pending the results of arbitration. *See Woischke v. Stursberg & Fine, Inc.*, 920 N.W.2d 419, 422 (Minn. 2018) ("[U]nder the Minnesota Uniform Arbitration Act, when a district court determines that an agreement to arbitrate exists and a dispute is arbitrable, the district court *must stay*, rather than dismiss, the judicial proceedings when granting a motion to compel arbitration.") (emphasis added) (citation omitted); *Delgadillo v. James McKaone Enters., Inc.*, No. 1:12-cv-1149 AWI MJS, 2012 WL 4027019, at *3 (E.D. Cal. Sept. 12, 2012) (court has discretion to stay case pending arbitration).[5]

///

---

[5] The Court's decision to stay this case is further supported by the Supreme Court's most recent decision to grant *certiorari* in *Smith v. Spizziri*, No. 22-1218, on the question of whether the Court must stay or dismiss an action after concluding the parties have agreed to arbitrate an issue. Regardless, now that the Court has concluded the parties agreed to arbitrate under the Agreement, Minnesota arbitration laws govern this dispute, requiring a stay.

17

**CONCLUSION**

Based upon the foregoing, the Court **ORDERS**:

(1) Defendants' Motion to Compel Arbitration and Stay Proceedings (Doc. 15) is **GRANTED**.

(2) This case is **ADMINISTRATIVELY STAYED** pending the final resolution of arbitration of Plaintiff's claims against Defendants. The parties **SHALL** file a joint status report within 120 days and every 120 days thereafter, and they **SHALL** file a joint notice within **14 days** of the date arbitration is completed.

IT IS SO ORDERED.

Dated:   **April 19, 2024**

UNITED STATES DISTRICT JUDGE